UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS LOUIS ALBA,<br><br>              Defendant-Petitioner,<br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>              Respondent. | CASE NO. 09-CV-1789 W<br>            01-CR-3177 W<br><br>**ORDER DENYING MOTION FOR CERTIFICATE OF APPEALABILITY [DOC. 1249]** |

On August 13, 2009, Petitioner Dennis Louis Alba, a federal prisoner proceeding *pro se*, commenced this Section 2255 habeas corpus proceeding. On May 18, 2010, Petitioner filed a First Amended § 2255 Motion to Vacate, Set Aside or Correct Sentence (the "Amended Petition" [Doc. 1200][1]). Respondent United States of America opposed the motion, and on November 18, 2011, this Court denied the Petition. Petitioner now seeks a certificate of appealability ("COA"). For the reasons stated below, the Court **DENIES** Petitioner's motion for a COA [Doc. 1249].

//
//
//

---

[1] All docket references refer to Case No. 01-CR-3177.

I.   STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 State. 1214 (1996) ("AEDPA"), a federal prisoner may not appeal the denial of a section 2255 habeas petition unless he obtains a COA from a district or circuit judge. 28 U.S.C. § 2255 (c)(1)(A); see also United States v. Asrar, 116 F.3d 1268, 1269-70 (9th Cir. 1997) (holding that district courts retain authority to issue certificates of appealability under the AEDPA). In deciding whether to grant a COA, a court must either indicate the specific issues supporting a certificate or state reasons why a certificate is not warranted. Asrar, 116 F.3d at 1270. A court may issue a COA only if the applicant has made a "substantial showing" of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To meet this standard, Petitioner must show that: (1) the issues are debatable among jurists of reason; (2) a court could resolve the issues in a different manner; or (3) the questions are adequate to deserve encouragement to proceed further. *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000) (*citing Slack v. McDaniel*, 529 U.S. 473 (2000)); *Barefoot v. Estelle*, 463 U.S. 880 (1983). Petitioner does not have to show "that he should prevail on the merits. He has already failed in that endeavor." *Lambright*, 220 F.3d at 1025 (citing *Barefoot*, 463 U.S. at 893 n.4).

II.   ANALYSIS

Petitioner argued that his sentence should be vacated and corrected because he was denied effective assistance of counsel in violation of the Sixth Amendment.

To prevail on an ineffective assistance of counsel claim, a petitioner must prove that the performance of his or her attorney was grossly deficient, and that the defense was prejudiced by the attorney's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner bears the burden of establishing both elements. U.S. v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).

Given the "distorting effects of hindsight," in evaluating an ineffective assistance of counsel claim, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. A petitioner may establish prejudice only by demonstrating a reasonable probability that but for his attorney's error, the outcome of his trial would have been different. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

Here, Petitioner raised numerous theories supporting his ineffective assistance of counsel claim. The Court will address each separately.

**A.    The Continuing Criminal Enterprise charge.**

Petitioner argued that his attorney failed to challenge the Continuing Criminal Enterprise ("CCE") charge (Count 1 of the Second Superseding Indictment), which Petitioner contended was defective for a number of reasons. (*See Amended P&A in Support of Amended Petition* ("Amended P&A") [Doc. 1200-5] 6–17.) Petitioner first argued that the CCE charge failed to allege the violations underlying the § 848(a) offense and therefore lacked a necessary element. (*Id.* 11-13.) Petitioner was wrong.

The indictment asserted violations of 21 U.S.C. §§ 846, 843(b), and 841(a)(1) as the predicate violations supporting the CCE charge:

> Beginning at a date unknown to the grand jury and continuing up to and including October 18, 2001, within the Southern District of California, and elsewhere, defendant DENNIS LOUIS ALBA, did knowingly and intentionally engage in a continuing criminal enterprise *by violating various provisions of the Controlled Substances Act (Title 21, United States Code, Sections 846, 843(b) and 841(a)(1))*, which offenses were part of a continuing series of violations of the Controlled Substances Act, and were undertaken by defendant DENNIS LOUIS ALBA with at least five other persons, with respect to whom defendant DENNIS LOUIS ALBA occupied a position as organizer, supervisor, and leader, and from which continuing series of violations defendant DENNIS LOUIS ALBA obtained substantial income and resources; in violation of Title 21, United States Code, Sections 848(a).

1  (*Sec. Super. Indictment* 1:23–2:8 (emphasis added).) And although each violation was not specifically enumerated, there is "no legal requirement that the violations which make up the continuing series be specifically listed in the indictment." United States v. Sterling, 742 F.2d 521, 526 (9th Cir. 1984).

Petitioner next argued that the CCE charge failed to allege that he acted "in concert with" at least five other persons. (*Amended P&A* 11–15.) But the Supreme Court has held that the agreement required to satisfy the "in concert with" language of §848 is identical to the conspiratorial agreement required for conviction under §846. Accordingly, because the CCE charge included § 846 as one of the "series of violations," the "in concert with" language was unnecessary.[2] See Rutledge v. United States, 517 U.S. 292, 300 (1996).

Petitioner also argued that Count 1 improperly charged the "series of violations" in the disjunctive. (*Amended P&A* 14:10–15:12.) This argument was completely without merit. The CCE charge alleged the violations in the conjunctive: "Title 21, United States Code Sections 846, 843(b) and 841(a)(1)." (*Sec. Super. Indictment* 1:22–2:8 (emphasis added).)

Petitioner's final challenge was that the CCE charge failed to allege a start date, establish a definite period of time that the continuing series spanned, or establish a time period during which supervisees were managed. (*Amended P&A* 15:13–17:4.) But the temporal language used in Petitioner's CCE charge was identical to the temporal language used in co-defendant Forrester's narcotics conspiracy count. (*Sec. Super. Indictment* 1:23–24, 2:10–11 ("Beginning at a date unknown to the grand jury and continuing up to and including October 18, 2001 . . .").) And the Ninth Circuit already rejected co-defendant Forrester's challenge to that exact language. See United States v. Forrester, 616 F.3d 929, 940–41 (9th Cir. 2010).

---

[2] Petitioner also challenged the CCE charge on the ground that it did not expressly incorporate by reference Count 2, the §846 offense. But the inclusion of a §846 offense as one of the "series of violations" alleged in the CCE charge made such incorporation unnecessary.

Because the CCE charge was legally sufficient, Petitioner's first ineffective-assistance-of-counsel theory lacked merit.

B.  **Bill of particulars.**

Petitioner next contended ineffective assistance based on counsel's failure to request a bill of particulars for the CCE charge.

> The purposes of a bill of particulars are threefold: To inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes.

United States v. Ayers, 924 F.2d 1468, 1483 (9th Cir. 1991). A sufficiently definite indictment coupled with a "significant amount of discovery" obviates the need for a bill of particulars. Id. at 1484. "The goal of a bill of particulars is satisfied if the defendant is aware of the theory of the government's case. . . . Even if an indictment is vague, a bill of particulars is not necessary if the government's disclosures and discovery adequately advise the defendant of the charges against him." United States v. Carpenter, 35 F.Supp.2d 1189, 1193 (N.D. Cal. 1999).

Petitioner did not dispute that he was provided with an extensive amount of discovery by the Government. Such extensive discovery, coupled with the sufficiently definite indictment discussed above, were more than adequate to apprise Petitioner of the charges against him and the evidence the Government intended to rely upon at trial. Thus, it was not objectively unreasonable for Petitioner's attorney to refrain from requesting a bill of particulars.

C.  **Investigate evidence of the ongoing ecstasy cook.**

Petitioner next alleged ineffective assistance based on counsel's failure to conduct a pretrial investigation to impeach Government witnesses Israel Hernandez and Special Agent Coffey. (*Amended P&A* 21–25.) Petitioner objected to Hernandez's testimony,

corroborated by Special Agent Coffey's testimony, of an on-going ecstasy cook on the night of Petitioner's arrest.

Petitioner's arguments regarding Hernandez focused on counsel's decision not to challenge testimony regarding how far along the ecstasy cook was on the night Petitioner was arrested. When compared with the overwhelming evidence of Petitioner's guilt, including wiretap conversations, CCTV videos, and Petitioner's confession, Petitioner failed to demonstrate how challenging Hernandez about the yield of a specific cook or the timing of the process would affect the outcome of the trial.

Petitioner's argument regarding Special Agent Coffey was no more compelling. Petitioner alleged counsel failed to challenge Coffey's testimony that ". . . based upon the view we had from inside the facility with the covert camera, we were actually able to tell that they [Petitioner and Hernandez] were cooking inside." (*Amended P&A* 24:10–13.) But Coffey was a highly trained DEA agent who observed video footage of Alba, Hernandez and Chavez going in and out of a clandestine lab carrying objects Coffey knew were consistent with an ongoing cook. Given these circumstances and the other evidence against Petitioner, counsel's strategic decision not to challenge Coffey's testimony was not objectively unreasonable.

### D. <u>Withdrawal defense.</u>

Petitioner next alleged counsel provided ineffective assistance by failing to pursue a defense based on Petitioner's alleged withdrawal from the conspiracy. (*Amended P&A* 25–32.) But Petitioner's withdrawal defense was wholly without merit and therefore counsel's decision to not pursue such a defense was reasonable.

"Withdrawal from a conspiracy requires disavowal of the conspiracy or an affirmative action that would have defeated the purpose of the conspiracy, or definite, decisive and positive steps to show that the conspirator's disassociation with the conspiracy is sufficient." United States v. Loya, 807 F.2d 1483, 1493 (9th Cir. 1987) (citations omitted). Withdrawal is an affirmative defense. If a defendant can introduce

1  sufficient evidence to make a prima facie case, the burden then shifts to the government
2  to prove beyond a reasonable doubt that the defendant did not withdraw. <u>United
3  States v. Lothian</u>, 976 F.2d 1257, 1261–62 (9th Cir. 1992).

4  Petitioner's withdrawal defense was without merit. Petitioner did not disavow
5  the conspiracy or take any affirmative action to defeat the point of the conspiracy. As
6  evidence of his disavowal, Petitioner relied on several intercepted phone calls between
7  Petitioner and his co-conspirators. (*Amended P&A* 27:21–24.) These statements, even
8  viewed in a light most favorable to Petitioner, only show that he was contemplating
9  shutting down the Escondido lab site. (*Id.*) And tellingly, most of the statements
10 occurred after the bank informed Petitioner of the criminal investigation into his
11 activities. (*Id.* 28:1–25.) Petitioner's contention that these statements demonstrate
12 withdrawal—instead of Petitioner's attempt to dispose of criminal evidence—strains
13 credulity.

14 Regardless of what pre-arrest statements Petitioner did or did not make, he was
15 arrested at the lab site during an on going ecstasy cook. Petitioner confessed to his
16 ongoing involvement in the charged conspiracy. Withdrawal was not a viable defense
17 for Petitioner. And the Court agrees with Respondent that Petitioner's attorney would
18 have lost credibility with the jury had he decided to pursue such a defense. Petitioner's
19 theory, therefore, lacked merit.

20

21   **E.   <u>Testimony regarding Petitioner's post-arrest statement.</u>**

22 Petitioner admitted he gave a complete and detailed confession of his illegal
23 activities to the DEA. (*Amended P&A* 32:36.) Nevertheless, Petitioner argued his
24 attorney failed to challenge forty statements by the prosecutor or Special Agent Coffey
25 that allegedly "were inconsistent with or material variances" of Petitioner's post-arrest
26 statement. (*Id.* 33:8–11.)

27 But Petitioner failed to explain or provide evidence supporting his contention
28 that the forty challenged statements were at odds with his post-arrest statement.

1  Moreover, the record confirms his counsel's performance was not deficient. As
2  Petitioner admitted, his attorney challenged the voluntariness of the statement,
3  objected to the use of the statement at the beginning of trial, and argued against the
4  statement's validity during closing argument. (*See Amended P&A* 33:1–2, 33 n.9; *see*
5  *also Resp's Opp'n* 22 n.14.) In short, Petitioner failed to demonstrate that his attorney's
6  conduct was objectively unreasonable or that it somehow undermined the confidence
7  in the outcome of the trial.

### F. Jury instructions.

Petitioner alleged his attorney should have moved for acquittal, new trial, or appellate review because there was insufficient evidence to support the jury's finding on the CCE charge. Specifically, Petitioner argued that the CCE jury instruction required the jury to "find, beyond a reasonable doubt, a definite period of time for the series to have spanned; and a time period for management of supervisees charged in the indictment." (*Reply in Support of Amended Petition* ("Reply") [Doc. 1216-2] 12:14–17 (clarifying argument regarding counsel's failure to challenge the CCE Conviction).) According to Petitioner, the facts "material to [his] guilt did not exist. . . ." (*Id.* at 12:17–18.) The Court strongly disagrees. Petitioner's confession, his co-conspirators' testimony, as well as other evidence introduced at trial supports the jury's finding on the CCE charge. Accordingly, Petitioner's contention that his counsel's conduct was objectively unreasonable lacked merit.

### G. Special jury verdict form.

Petitioner alleged ineffective assistance based on counsel's failure to draft and submit a special jury verdict form for the CCE charge. (*Amended P&A* 37–42.) Petitioner cited no case law supporting this argument. Additionally, as Respondent correctly pointed out, special verdict forms in criminal jury trials are generally disfavored and there was no legal requirement for Petitioner's attorney to submit one

in this case. See United States v. Ramirez, 537 F.3d 1075, 1083 (9th Cir. 2008) ("Although there is no per se prohibition, as a rule, special verdicts in criminal trials are not favored. [Citation omitted.]")  And although Petitioner now believes there would have been an advantage submitting a special jury verdict form, it is clear his attorney did not believe so.  Accordingly, based on the law and facts of this case, the Court found Petitioner's strategic decision not to submit a special jury verdict form was not objectively unreasonable.

### H.    Drug quantity calculation

Petitioner argued counsel provided ineffective assistance by failing to challenge the Court's calculation of drug quantity on direct appeal.  Petitioner argues that had the government used a proper ratio of precursor chemicals to finished ecstasy, the final yield would have been less than 48.6 kilos, thereby reducing Petitioner's adjusted offense level by two points.  (*Amended P&A* 42:11–43:9.)

Assuming, *arguendo,* Petitioner is correct and the calculation of the quantity of drugs was in error, Petitioner could not prove prejudice.  The Court determined Petitioner had an adjusted offense level of 39. (*Resp's Opp'n* Ex. G. 37:9–10.)  With a criminal history category of IV, the Federal Sentencing Guideline range was 360 months to life.  The Court imposed a 360 month sentence.  (*Id.* at 341:10–17.)  If Petitioner's adjusted offense level was reduced to 37, as he argues, the guideline range would still be 360 months to life.  Therefore, Petitioner was incapable of showing prejudice.

## III.    REQUEST FOR JUDICIAL NOTICE

Petitioner filed a Request for Judicial Notice in which he argued that under United States v. McCarthy, 2011 WL 1991146 (S.D.N.Y. 2011), Petitioner should be resentenced based on an MDMA-to-marijuana equivalency ratio of 50:1.  (*RJN* 3:11–14.)  Petitioner's reliance on McCarthy was misplaced for two reasons.  First, the district court in McCarthy did not use the 50:1 ratio suggested by Petitioner, but instead

used a 200:1 ratio in calculating the defendant's sentence. See Id. at *4. Second, and more importantly, unlike the defendant in McCarthy, Petitioner was convicted of being in "a position of organizer, supervisor, and leader" of a continuing criminal enterprise (*see Resp's Opp'n* Ex. B. 1:25–2:10), which accounts for the bulk of his sentence. Petitioner's argument, therefore, lacked merit.

### IV. CONCLUSION AND ORDER

For the reasons outlined above, the Court finds that the issues presented in the Petition were neither debatable among jurists of reason, nor would another court resolve the issues in a different manner. Accordingly, Petitioner's request for a COA [Doc. 1249] is **DENIED**.

**IT IS SO ORDERED.**

DATED: February 13, 2012

Hon. Thomas J. Whelan
United States District Judge